OPINION
Appellant, Alfred Pincione, appeals from the judgment of the Warren Municipal Court, Trumbull County, Ohio, finding him guilty of operating a gambling house.
On September 26, 2000, appellant was charged with operating a gambling house, in violation of R.C. 2915.03(A)(2), a misdemeanor of the first degree. A bench trial commenced on January 25, 2001. On March 16, 2001, the trial court found appellant guilty and entered judgment. Sentencing was stayed pending appeal.
At trial, the state presented testimony from the complainant, Howland Township Police Chief Steve Lamantia ("Chief Lamantia"), and the principal of the Immaculate Conception School, Bob Sferra ("Sferra"). The defense presented the testimony of appellant. Both sides also admitted exhibits into evidence.
Chief Lamantia testified that he received a phone call, at home, regarding suspected illegal gambling at 2140 Elm Road, known as Elm Road Instant Bingo, located in Howland Township. Upon arriving at the location, Chief Lamantia noticed four Treasure Quest vending machines.
Each machine has a slot in which currency from $1 to $100 can be placed. Once the money is entered, games are displayed on the screen. Upon winning a game, a player must choose to either continue, in which case he will receive game credits, or to redeem the credits immediately by pressing a button. If a player chooses to redeem his credits, he receives a card that the attendant redeems for cash.
Chief Lamantia attested that appellant was inside the location. He also attested that he found a plastic box containing $2,065 and machine total slips from each of the four machines.
Sferra testified that Immaculate Conception School, a 501(c)(3) organization, received $400 from Elm Road Instant Bingo. He denied that appellant was the school's agent or acting with the school's authority.
Appellant, who operated the premises, testified that he purchased the four machines from Bob Atwood ("Atwood") on a contingency basis whereby Atwood received sixty percent of the profits and appellant received forty percent. Appellant also testified that he paid several months' rent with the proceeds. Appellant stated that he believed his actions were legal based on three letters, addressed to three different people, that he received from Atwood. At trial, appellant's counsel argued that the Treasure Quest vending machines were not slot machines, that the games were a permissible game of chance, and that appellant did not have the requisite mens rea of recklessness.
The trial court determined that the Treasure Quest vending machines were slot machines, the games were not conducted by a charitable organization, and that appellant's actions were reckless. Accordingly, the trial court found appellant guilty of violating R. C. 2915.03(A)(2). From this judgment appellant appeals, raising the following assignment of error:
 "[1.] The trial court erred in finding defendant guilty of `Operating a Gambling House' (R.C. 2915.03(A)(2)) and entering judgment thereon."
In his sole assignment of error, appellant argues that the trial court erred in finding that he acted recklessly since he obtained and relied on three "legal opinion" letters regarding the vending machines. Appellee argues that relying on three letters, dating back as far as 1984 and addressed to three different people, instead of relying on the relevant statute and/or consulting an attorney, is reckless conduct.
Pursuant to R.C. 2915.03(A)(2), "[n]o person, being the owner or lessee, or having custody, control, or supervision of premises, shall * * * [r]ecklessly permit such premises to be used or occupied for gambling in violation of section 2915.02 of the Revised Code."
R.C. 2915.02 states:
"(A) No person shall do any of the following:
"* * *
 "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any scheme or game of chance conducted for profit[.]
"* * *."
Two statutory exceptions to these prohibitions are enumerated in R.C.2915.02(D)(1), which applies to schemes of choice, and (D)(2), which governs games of chance. However, R.C. 2915.02(D)(2) specifically removes slot machines from that exception.
The trial court determined that the Treasure Quest vending machines were slot machines. Because appellant did not appeal from the court's finding that the machines were slot machines, appellant has waived the issue. Accordingly, the only remaining possible exception is set forth in R.C. 2915.02(D)(1). For the reasons that follow, we conclude that appellant failed to comport with the requisite elements of R.C.2915.02(D)(1).
R.C. 2915.02(D) provides that the prohibitions against gambling set forth in this section do not apply to:
 "(1) Schemes of chance conducted by a charitable organization that is * * * [a recognized 501(c)(3) organization], provided that all of the money or assets received from the scheme of chance after deduction only of prizes paid out during the conduct of the scheme of chance are used by, or given, donated, or otherwise transferred to, any [recognized 501(c)(3) organization], and provided that the scheme of chance is not conducted during, or within ten hours of, a bingo game conducted for amusement purposes only pursuant to [R.C. 2915.12]."
In the instant case, the charitable organization, Immaculate Conception School, did not conduct the operation of the Treasure Quest vending machines. The evidence reveals that appellant conducted the gambling without the authority or backing of the school. "The common usage of `conduct,' when used as a verb, connotes management, control, or the giving of direction." Freedom Road Found. v. Ohio Depart. of LiquorControl, 80 Ohio St.3d 202, 205, 1997-Ohio-346.
Sferra testified that appellant was not Immaculate Conception School's agent for conducting charitable gambling and that appellant did not have any authority to act on the school's behalf. In fact, Sferra testified that he did not know what kind of business appellant conducted when appellant made the $400 donation.
Further, the evidence reveals that appellant did not donate all of the proceeds to Immaculate Conception School. Appellant testified that he gave sixty percent of the proceeds to Mr. Atwood and that he also paid the rent with the proceeds. Accordingly, appellant failed to comport with the statutory requirements of donating all of the proceeds to the charitable organization.
"A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C). Appellant contends that he did not act recklessly because he obtained three letters from Atwood, who operates a similar business in another city.
Two of the letters were prepared by the Cuyahoga County Prosecutor's office and opined that instant vending machines operated by charitable organizations are exempted games of chance. These letters, dated 1984 and 1994 respectively, were written to Mr. John Grifa and Mr. Stewart Mendel, who are not parties to the instant action. The third letter was from Attorney Kurt Gearhiser to Chet Simons, wherein Atty. Gearhiser opined that video pull-tab machines are schemes of chance and, therefore, legal for charitable gambling purposes. These letters were not directed to appellant, were not drafted with respect to the jurisdiction in which appellant planned to operate, and did not address all of the statutory requirements for charitable gambling. Appellant did not consult an attorney nor read the applicable statute. Instead, he chose to rely on letters dating back to 1984, which do not specifically address the applicable law in effect in Trumbull County.
Appellant's actions amount, at the very least, to heedless indifference to the consequences. Thus, appellant possessed the requisite mens rea of recklessness.
Based on the foregoing, the judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, P.J., DIANE V. GRENDELL, J., concur.